## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 29 2016, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James C. Spencer
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Frank M. Hancock, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 29, 2016 <br><br> Court of Appeals Case No. <br> 39A05-1511-CR-1973 <br><br> Appeal from the Jefferson Superior Court <br><br> The Honorable Fred H. Hoying, Senior Judge <br><br> Trial Court Cause No. <br> 39D01-1409-F6-840 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Following a jury trial, Frank Hancock was convicted of Level 6 felony possession of a narcotic drug and Class A misdemeanor possession of a synthetic drug. In this direct appeal, Hancock argues that his trial counsel was ineffective for failing to challenge the admission of the drugs at trial. He also argues that the evidence is insufficient to support his conviction for possession of a narcotic drug because the State failed to establish that the pill found on his person contained a schedule II, rather than a schedule III, controlled substance. Because we find that the drugs were admissible, Hancock's ineffectiveness claim fails. In addition, because the pill contained hydrocodone, a schedule II controlled substance, the evidence is sufficient to support his conviction for possession of a narcotic drug. We therefore affirm the trial court.

# Facts and Procedural History

[2] On September 28, 2014, Officer Aaron Watson of the Madison Police Department saw Hancock driving a maroon Kia. Although Officer Watson suspected that Hancock's driving privileges were suspended, he did not stop Hancock at that time because he was off-duty.

[3] The next day, September 29, 2014, while on duty, Officer Watson checked and verified that Hancock's driving privileges were suspended. According to Officer Watson, around midnight he saw the same maroon Kia pass by, and he followed it until it parked in front of the house Officer Watson knew to be

Hancock's residence. Officer Watson then stopped his police cruiser in the middle of the street next to the Kia without activating the emergency lights. Hancock exited the car from the driver's door. Hancock then walked toward Officer Watson, and the two of them met in the street, between the Kia and the police cruiser.

[4] Officer Watson asked Hancock whether he had a valid driver's license, and Hancock said no. Officer Watson called dispatch and confirmed that Hancock did not have a driver's license. During this process, Officer Watson smelled what he believed to be the odor of marijuana coming from Hancock and from inside the Kia, so he asked Hancock for permission to search the car. Hancock refused. Officer Watson then called a police canine unit. A drug-sniffing dog arrived, sniffed the exterior of the car, and gave a positive alert for the presence of drugs. At this point, Officer Watson arrested Hancock for driving while suspended and put him in his patrol car. Officers then searched the car and found two hand-rolled, partially burnt cigarettes. A field test was positive for marijuana.

[5] Hancock was transported to the Jefferson County Jail and preliminarily booked on charges of driving while suspended and possession of marijuana. During the booking process, a white pill was found in Hancock's right pocket.

[6] The Indiana State Police Laboratory later tested one of the cigarettes and the white pill. The forensic scientist concluded that the cigarette contained XLR11,

a synthetic cannabinoid commonly known as "spice." Tr. p. 75-76.[1] The forensic scientist also concluded that the white pill contained hydrocodone.

[7] The State charged Hancock with Count I: Level 6 felony possession of a narcotic drug (hydrocodone); Count II: Class A misdemeanor possession of a synthetic drug (XLR11); and Count III: Class A misdemeanor driving while suspended. At trial, Hancock testified that he was not driving before Officer Watson pulled up in front of his house; rather, he walked from his house to the car, turned the engine on, and sat in the driver's seat to smoke.

[8] The jury found Hancock guilty of Counts I and II, but it was split three to three on Count III, which was declared a mistrial. The court sentenced Hancock to an aggregate term of two years, with one year executed and one year suspended to supervised probation.

[9] Hancock now appeals.

# Discussion and Decision

[10] Hancock raises two issues. First, he argues that trial counsel was ineffective. Second, he contends that the evidence is insufficient to support his conviction for possession of a narcotic drug.

---

[1] Synthetic cannabinoids are compounds designed to mimic the psychoactive properties of marijuana, first reported in the United States in 2008. *Tiplick v. State*, 43 N.E.3d 1259, 1261 (Ind. 2015).

# I. Ineffective Assistance of Trial Counsel

[11] Hancock first contends that his trial counsel was ineffective because she failed to challenge the admission of the spice and hydrocodone. We review claims of ineffective assistance of trial counsel under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pruitt v. State*, 903 N.E.2d 899, 905-06 (Ind. 2009), *reh'g denied*. To satisfy the first prong, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, "committing errors so serious that the defendant did not have the counsel guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002), *reh'g denied.* To satisfy the second prong, the defendant must show prejudice: "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Overstreet v. State*, 877 N.E.2d 144, 152 (Ind. 2007). In order to prove ineffective assistance of counsel due to failure to challenge the admission of evidence, the defendant must demonstrate "prejudicial failure to raise an objection that the trial court would have been required to sustain. Otherwise stated, if the trial court overruled the objection, it would have committed error, and the error would have had a prejudicial effect." *Stephenson v. State*, 864 N.E.2d 1022, 1035 (Ind. 2007), *reh'g denied*.

[12] Hancock argues that trial counsel should have challenged the discovery of the spice and hydrocodone because his "original detainment" was illegal, thereby invalidating the subsequent searches that led to the discovery of the spice and

hydrocodone. Appellant's Br. p. 8. An officer may conduct a brief investigatory stop of an individual when, based on the totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. *J.B. v. State*, 30 N.E.3d 51, 55 (Ind. Ct. App. 2015). The investigatory stop, also known as a *Terry* stop, is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. *Id.* Reasonable suspicion is determined on a case by case basis. *Id.* The reasonable-suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Id.*

[13] Here, Officer Watson testified that he saw Hancock driving a maroon Kia the day before the arrest. He also testified that the next day he verified that Hancock's driving privileges were suspended, observed the same maroon Kia drive by, followed the Kia to where he knew Hancock lived, and saw Hancock exit the car from the driver's door. This testimony would support a conclusion that Officer Watson had a reasonable suspicion that Hancock was driving without a license and therefore properly stopped and questioned him.

[14] Hancock, however, claims that he was not actually driving before his encounter with Officer Watson, that Officer Watson was lying when he testified otherwise, and that the fact that the jury deadlocked on the driving-while-suspended count means that the trial court would not have believed Officer

Watson. There are several problems with Hancock's position. First, we must judge the decisions of Hancock's trial counsel based on what she knew at the time she made those decisions, not in hindsight based on the jury's deliberations. Second, even if the jury's split vote on the driving-while-suspended count were somehow relevant, we have no idea whether three jurors voted not guilty because they disbelieved Officer Watson or for some other reason. Third, and most importantly, even if the trial court had believed that Officer Watson fabricated the story about following Hancock home, Hancock does not dispute Officer Watson's testimony that he was in the street outside Hancock's house when Hancock got out of the Kia and that he saw Hancock emerge from the driver's door of the car. These facts, taken together with the fact that Officer Watson verified that Hancock's driving privileges were suspended, would have given Officer Watson reasonable suspicion that Hancock committed driving while suspended and, therefore, authority to conduct an investigatory stop.[2]

[15] Once Officer Watson received confirmation from dispatch that Hancock did not have a license, he had probable cause to arrest Watson for driving while suspended. In addition, during the questioning, Officer Watson smelled the odor of what he believed to be marijuana. When a trained and experienced police officer detects the strong and distinctive odor of burnt marijuana coming

---

[2] The State argued that the initial encounter was consensual; however, we do not address this issue because we find that Officer Watson had reasonable suspicion.

from a vehicle, the officer has probable cause to search the vehicle. *State v. Hawkins*, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002), *trans. denied*. Accordingly, the odor of what Officer Watson believed to be marijuana gave him probable cause to search the car. The cigarettes found during the search, therefore, were admissible.

[16] Finally, as Hancock was lawfully arrested, the search incident to arrest conducted at the jail was also valid. *See Garcia v. State*, 47 N.E.3d 1196, 1200 (Ind. 2016) ("[O]nce a lawful arrest has been made, authorities may conduct a 'full search' of the arrestee for weapons or concealed evidence." (quotation omitted)). Accordingly, the white pill found in Hancock's pocket during this search was also admissible.

[17] Hancock has not established that the trial court would have been required to grant a motion to suppress or sustain an objection regarding the spice and the pill. Therefore, trial counsel was not ineffective for failing to raise such a challenge. *See Stephenson*, 864 N.E.2d at 1035.

## II. Sufficiency of the Evidence

[18] Hancock next contends that the evidence is insufficient to support his conviction for Level 6 felony possession of a narcotic drug, which requires a schedule I or II drug. *See* Ind. Code § 35-48-4-6(a) ("A person who, without a valid prescription . . ., knowingly or intentionally possesses . . . a narcotic drug (pure or adulterated) classified in schedule I or II, commits possession of . . . a narcotic drug, a Level 6 felony."). Although Hancock concedes that

hydrocodone is a schedule II drug, he claims that because the pill found in his possession contained hydrocodone *and* acetaminophen, it may have been "a Schedule III controlled substance[] according to I.C. 35-48-2-8." Appellant's Br. p. 15.

[19] At trial, a forensic scientist with the Indiana State Police Laboratory testified that the pill contained "dihydrocodeinone *or* hydrocodone" plus "acetaminophen." Tr. p. 76 (emphasis added). The scientist then clarified that the pill contained "hydrocodone," an opiate derivative. *Id.*; *see also id.* at 82 (confirming that the pill "tested positive for the presence of hydrocodone"). At the time of the offenses in this case, "hydrocodone" was listed as a schedule II drug. *See* Ind. Code Ann. § 35-48-2-6(b)(1)(K) (West 2012). Also at the time of the offenses, "dihydrocodeinone," "with one (1) or more active nonnarcotic ingredients in recognized therapeutic amounts," was listed as a schedule III drug. Ind. Code Ann. § 35-48-2-8(e)(4) (West 2012). Notably, schedule III did not list hydrocodone. Because schedule II listed hydrocodone—regardless of whether it was combined with another nonnarcotic ingredient[3]—and schedule III did not list hydrocodone, we conclude that the evidence is sufficient to support Hancock's conviction for Level 6 felony possession of a narcotic drug for possessing hydrocodone, a schedule II drug.

---

[3] Effective April 23, 2015, Section 35-48-2-6 was amended to include both "hydrocodone" and "any hydrocodone combination product" as a schedule II drug. *See* P.L. 56-2015.

Affirmed.

Barnes, J., and Mathias, J., concur.